**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jain SYLER, Defendant-Appellant.**

**No. 18079.**

United States Court of Appeals,
Seventh Circuit.

July 6, 1970.

Patrick R. Doyle, La Crosse, Wis., for appellant.

John O. Olson, John E. Clarke, Asst. U. S. Atty., Madison, Wis., for appellee.

Before CUMMINGS and PELL, Circuit Judges, and ESCHBACH, District Judge.[1]

CUMMINGS, Circuit Judge.

Defendant was convicted of possessing twenty $20 counterfeit Federal Reserve notes, intending to defraud the United States, in contravention of Section 472 of the Criminal Code. 18 U.S.C. § 472. She received a jail sentence of 45 days and probation for the remainder of her 18-month prison sentence. The counterfeit notes upon which her conviction rested were found in her purse at the time of her arrest. On appeal, she contends that the search of the purse violated the Fourth Amendment and that introduction of the counterfeit bills was therefore error under Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

On August 20, 1968, Secret Service Agent Thomas Tully executed a complaint before the United States Commissioner

---

1. Judge Eschbach of the United States District Court for the Northern District of Indiana is sitting by designation.

in Madison, Wisconsin, alleging that defendant had passed a bogus $20 bill in Baraboo, Wisconsin, on the previous day. Tully stated that the complaint was based on the statement of a named attendant at the Clark Oil Company gasoline station in Baraboo that on the evening of August 19, he had received such a counterfeit bill "from a woman riding in the back seat of a 1965 Maroon Pontiac automobile." The complaint concluded:

> "Further, that personal investigation and observation of the complainant [disclosed] that the defendant is the woman who was riding in the back seat of said automobile at the time and place mentioned above."

On the basis of this complaint, at 12:30 p.m. on August 20th, the Commissioner issued a warrant for defendant's arrest. No search warrant was sought.

About two hours later, Tully learned that utilities were being connected at 113 Craig Avenue in Madison in the name of Ernest Finn, an alias for codefendant Arnold Lehtola.[2] Tully and a fellow officer proceeded to the address and saw there two automobiles registered in the names of the two defendants. The officers then decided to attempt to execute the warrants for both defendants' arrests.

About a block from the bungalow in question, the officers stopped a serviceman who was on his way to connect the gas there. After learning of his mission, the officers told him to proceed. The inside front door of the house was open, and the serviceman knocked on the outside screen door, shouting "Gas man." Tully knew that Lehtola had a history of violence and was informed that he was armed. Tully therefore became concerned that the serviceman might inadvertently become involved and be injured, and consequently told him to leave the premises. Tully and two other officers then stationed themselves at the sides of the front door, and Tully called out "Gas man." As defendant Syler unlatched the outer screen door and began to open it, Tully pulled it open further, entering the house with the other two officers. As he came through the door, he announced that he was a federal officer and that he had a warrant for her arrest. Defendant was arrested in the living room and another officer then exerted control of her while Tully and the third officer proceeded in search of the second suspect.

Tully and the other officer entered the bedroom which was located 12 feet away from the point of defendant's arrest. There they found Lehtola and took him into custody. He was searched, handcuffed and returned to the living room. Each of the defendants was then seated on a straight chair, the arrest warrants were read to them, and they were advised of their rights.

While defendant Syler was seated in the living room, detective McCarthy of the Madison, Wisconsin, Police Department picked up her purse from a davenport or table in the room and began to examine its contents. Before he found any contraband, defendant requested her purse, ostensibly because she wanted her glasses. The detective gave her the purse, from which she removed her glasses, and then continued his search. On his second inspection he discovered the counterfeit bills that are the subject of the indictment under which defendant was convicted. These bills were secreted in a cosmetic case within the purse itself.

■ Defendant's motion to suppress the counterfeit notes taken from her purse was denied by the trial court. She first objects that the arrest warrant was insufficient. In its attendant opinion, the trial court construed the above-quoted part of the arrest complaint against defendant by concluding that Tully was the identifying witness. This construction was allowable in view of the Supreme Court's admonition that technical requirements of specificity have no proper place in this area. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct.

---

2. Lehtola is still at large and therefore has not been tried.

**70**

741, 13 L.Ed.2d 684. Thus construed, the warrant adequately stated probable cause for arrest and was correctly issued. See Jaben v. United States, 381 U.S. 214, 221–225, 85 S.Ct. 1365, 14 L.Ed.2d 345.

■■■■ We also agree with the district court's finding that force was not employed to gain entrance to the bungalow and no violation of the principles of Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828, occurred. The facts conceded by defendant show that the front door was already open. Apparently responding to the announcement of the arrival of the "Gas man," defendant unlatched the screen door and partly opened it. Officer Tully merely completed the operation voluntarily initiated by defendant. No attempt was made to bar his way and no force was applied in gaining entry. Cf. Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); United States v. Marson, 408 F.2d 644, 646 (4th Cir. 1968), certiorari denied, 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698. Reliance upon ruse as a means of access to the interior of the house did not invalidate the legality of the entry and ensuing arrests. Smith v. United States, 357 F.2d 486, 488 note 1 (5th Cir. 1968); Dickey v. United States, 332 F.2d 773, 777–778 (9th Cir. 1964), certiorari denied, 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545; Leahy v. United States, 272 F.2d 487, 489 (9th Cir. 1959), certiorari dismissed, 364 U. S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459.

■■■ The final objection presented to the Government's acquisition of the evidence involves the scope of the search incident to her arrest. We need not decide whether, in this case, the search of defendant's purse satisfied the criteria of Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685. In United States v. Blassick, 422 F.2d 652, 655 (7th Cir. 1970), we limited *Chimel* to prospective application, and the search presently challenged occurred on August 20, 1968. Under applicable law, the search of defendant's purse was clearly

incident to her arrest and reasonable. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; cf., *e.g.*, United States v. Owens, 346 F.2d 329 (7th Cir. 1965), certiorari denied, 382 U. S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119; Cotton v. United States, 361 F.2d 673 (8th Cir. 1966); United States v. Smith, 308 F.2d 657 (2d Cir. 1962), certiorari denied, 372 U.S. 906, 83 S.Ct. 717, 9 L. Ed.2d 716.

The judgment of conviction is affirmed.