531 P.2d 603
**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Robert E. CHAVEZ, Defendant-Appellant.**

**No. 1607.**

Court of Appeals of New Mexico.

Dec. 18, 1974.

Certiorari Denied Jan. 27, 1975.

Robert L. Hilton, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Santa Fe, Lanny Messersmith, Asst. Atty. Gen., for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

Convicted of unlawful possession of heroin, defendant appeals. Section 54–11–23, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp. 1973). His contention concerning the amount of heroin possessed is answered by State v. Grijalva, 85 N.M. 127, 509 P.2d

894 (Ct.App.1973). The heroin was in a pocket of pants worn by defendant. The facts known to the officers prior to entry and observation by the officers after entry provided probable cause for the search of defendant. State v. Garcia, 83 N.M. 490, 493 P.2d 975 (Ct.App.1971). See State v. Rivera, 85 N.M. 723, 516 P.2d 694 (Ct. App.1973). The issue requiring discussion is the validity of entry by the officers upon the premises where the narcotics paraphernalia was observed. See State v. Miller, 80 N.M. 227, 453 P.2d 590 (Ct. App.1969).

Officers, investigating a shoplifting incident at a store, were given a "locate" on a certain automobile. They ascertained the vehicle was owned by Mr. Brooks. They proceeded to the Brooks' place of business, saw the automobile and contacted Brooks. Brooks informed the officers that he had loaned the car to defendant who was upstairs in a room that Brooks "allowed him to sleep in." The officers asked to speak to defendant. Brooks took the officers to defendant's room.

The evidence is undisputed that Brooks knocked on the door to defendant's room. The evidence is conflicting as to whether the door to the room was open. We will assume the door was closed. One officer testified that Brooks stated: "We would like to come in." The second officer testified that Brooks stated: "Robert, are you in there?" Regardless of the exact words used by Brooks, defendant told Brooks to come in.

The officers followed Brooks into the room and observed the narcotics paraphernalia after entering. Having assumed that the door was closed when Brooks knocked, we also assume the evidence fails to show that defendant knew of the presence of the officers when he gave the invitation to enter. The officers agree they neither identified themselves nor announced their purpose (which was to investigate the shoplifting) before entering.

Defendant claims the unannounced entry of the police officers was constitutionally

unreasonable and made the subsequent search and seizure illegal. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963). We disagree.

We do not decide whether the officers had probable cause for an arrest prior to entry into defendant's room. See United States v. Harris, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); Ponce v. Craven, 409 F.2d 621 (9th Cir. 1969). Nor are we concerned with cases involving forcible entry because no force was used by the officers. See State v. Baca, 87 N.M. 12, 528 P.2d 656 (Ct.App. 1974); Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

What the officers did was follow Brooks into the room after defendant invited Brooks to enter. In United States v. Beale, 436 F.2d 573, opinion on rehearing, 445 F.2d 977 (5th Cir. 1971), cert. denied, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972), federal agents gained admission to defendant's room by having the hotel manager knock on defendant's door, announcing only the manager's presence. When defendant opened the door, the agents entered. This was held not to be an illegal entry.

Other cases holding entry by ruse not to be illegal if force is not an element of the entry are: United States v. Syler, 430 F.2d 68 (7th Cir. 1970); Smith v. United States, 357 F.2d 486 (5th Cir. 1966); Leahy v. United States, 272 F.2d 487 (9th Cir. 1959), cert. denied, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1960).

We hold the entry by the officers was not constitutionally unreasonable.

The judgment and sentence are affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

Prior to the case at hand, *not one court in any jurisdiction in the country* has held that it is constitutionally permissible for police officers to enter a citizen's home without a search warrant, without an arrest warrant, without probable cause for an arrest, without obtaining the occupant's consent, and without announcing their presence. Entry under these circumstances is trespass. It is not lawful police conduct.

After the two police officers had gained entry to defendant's apartment, they searched defendant and found a bag of heroin. They saw narcotics paraphernalia lying near the sink. They arrested defendant and advised him of his rights.

If the entry into defendant's apartment was unlawful, the subsequent search and seizure were unlawful, and the arrest was unlawful. State v. Miller, 80 N.M. 227, 453 P.2d 590 (Ct.App.1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Amador-Gonzales v. United States, 391 F. 2d 308 (5th Cir. 1968).

I. *The police officers' entry into defendant's apartment was unlawful.*

The circumstances of the police officers' entry into defendant's apartment are the following:

1) The officers were investigating a shoplifting, a crime with which defendant was not charged. They had no suspicion that defendant might be guilty of possession of heroin, the crime with which he was ultimately charged.

2) They had no "probable cause" to make an arrest, either for shoplifting or for possession of heroin. On the definition of "probable cause", see Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

3) They had no search warrant.

4) They had no arrest warrant.

5) They gained entry to defendant's room by getting defendant's landlord, Mr. Brooks, to knock on defendant's door. Brooks asked defendant if he could enter. Defendant told him that he could, without knowledge that police officers wished to enter with Brooks. Brooks opened the door and the police officers followed him inside.

## II. *Landlord's consent to enter and search defendant's apartment is not lawful.*

A landlord cannot give lawful consent to search of his tenant's premises. Search pursuant to the landlord's consent violates the tenant's Fourth Amendment guarantee against unreasonable searches and seizures. Evidence obtained as a result of the landlord's consent to enter a tenant's room is unlawfully obtained, whether it was found in "plain view" inside the room or as the result of an actual search of the premises. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Condon v. People, 176 Colo. 212, 489 P.2d 1297 (1971); People v. Porter, 227 Cal.App.2d 211, 38 Cal.Rptr. 621 (1964). Cf. State v. Johnson, 85 N.M. 465, 513 P.2d 399 (Ct. App.1973).

## III. *Authorities cited in the majority opinion are not in point.*

The cases on which the majority opinion relies to provide authority for the lawfulness of the police officers' entry into defendant's room are simply not in point. *In every one of those cases, government authorities either entered for the purpose of making an arrest with probable cause, or on an arrest warrant, or they had a search warrant.* In State v. Baca, 87 N.M. 12, 528 P.2d 656 (Ct.App.1974), police officers had a search warrant. In Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L. Ed.2d 828 (1968), customs agents entered defendant's apartment for the purpose of making an arrest with probable cause. In Miller v. United States, supra, police officers entered defendant's apartment for the purpose of making an arrest with probable

cause. In United States v. Beale, 436 F.2d 573, opinion on rehearing, 445 F.2d 977 (5th Cir. 1971), cert. denied, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972), federal agents entered defendant's room for the purpose of making an arrest with probable cause. In United States v. Syler, 430 F.2d 68 (7th Cir. 1970), secret service agents had an arrest warrant when they entered defendant's bungalow. In Smith v. United States, 357 F.2d 486 (5th Cir. 1966), federal agents had an arrest warrant when they entered defendant's apartment. In Leahy v. United States, 272 F.2d 487 (9th Cir. 1959), cert. denied, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1960), revenue agents had an arrest warrant when they entered defendant's home.

## IV. *The "ruse and deception" exception does not govern this case.*

The majority opinion distinguishes entry by ruse or deception, as in the instant case, from forcible entry which, under federal law, requires "notice of * * * authority and purpose." 18 U.S.C.A. § 3109 (1948); Sabbath v. United States, supra. The majority relies on law made by federal courts to give authority for that distinction. The *Sabbath* case set the present rule, under federal law, that entry into a dwelling by government authorities to execute a search warrant or to carry out an arrest must be preceded by notice to the occupant of authority and purpose.

In *Sabbath,* the Supreme Court held that notice must be given before any *"unannounced intrusion",* not just forcible breaking and entering. What has led the majority in the instant case to believe that *Sabbath* would not make the police officers' entry into defendant's apartment by means of deception unlawful is that, in a footnote, the *Sabbath* court said, "We do not deal here with entries obtained by ruse, which have been viewed as involving no 'breaking.' See, e. g., Smith v. United States, 357 F.2d 486, 488 n. 1 (C.A. 5th Cir. 1966); Leahy v. United States, 272 F.2d 487, 489 (C.A. 9th Cir. 1959)." In conse-

quence of that footnote, some federal courts have held that *Sabbath* did not disturb the distinction between forcible entry and entry by ruse or deception, which had been established by *Smith* and *Leahy*. See *Beale,* supra (opinion on rehearing); *Syler,* supra, Ponce v. Craven, 409 F.2d 621 (9th Cir. 1969) (California statute like 18 U.S.C.A. § 3109).

*However, in both Smith and Leahy, federal agents had arrest warrants when they gained entry to the apartments.* Lack of an arrest warrant prevents the instant case from falling within the ruse and deception exception to the federal notice requirement, that was set forth in *Smith* and *Leahy* and relied on in *Sabbath*.

### V. *The majority opinion misrepresents the status of the ruse or deception exception in the federal courts.*

Apart from the majority opinion's mistaken reliance on the ruse or deception exception to the federal notice requirement, there is further error in the majority's resort to that exception. The majority opinion leads one to believe that federal courts have uniformly accepted that exception, since *Sabbath*. In truth, however, the federal courts have split as to whether *Sabbath* requires that entry by ruse or deception be considered as an "unannounced intrusion" and, therefore, unlawful. The courts in *Beale, Syler* and *Ponce,* supra, have held that entry by ruse or deception is not unlawful. The court in United States v. Harris, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970), held that any entry without consent is an "unannounced intrusion" and, therefore, unlawful, in the absence of exigent circumstances, such as danger or possible destruction of evidence. The court in Bowers v. Coiner, 309 F. Supp. 1064 (S.D.W.Va.1970), held that entry by deception was unlawful, in violation of defendant's Fourth Amendment rights. The court in United States v. Burruss, 306 F.Supp. 915 (E.D.Pa.1969), stated that the essential point in the *Sabbath*

decision is that any *unannounced* entry is unlawful, regardless of the means used to gain entry. And the *Beale* court (supra) initially held that entry by ruse or deception is unlawful, following *Sabbath*. When it reversed itself on rehearing, the court stated, "We are not without doubts." 445 F.2d at 978. The opinion on rehearing was issued with a strong dissent, which stated:

> If the basic principle is, as I deem it to be, "the reverence of the law for the individual's right of privacy in his house," [quoting from *Sabbath*] then * * * we should not hesitate to apply what to me appears to be a clear and logical extension of the doctrine announced in Sabbath. * * * 445 F.2d at 979.

### VI. *The majority opinion sanctions conduct that is unconstitutional and that has long been prohibited by our system of laws.*

The Fourth Amendment guarantees to all citizens the right to be secure in their homes against unreasonable and unwarranted intrusions by the government. That guarantee is deep-rooted in Anglo-American criminal law, and has time and again been upheld by our courts.

> The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement! Remarks attributed to William Pitt, in Parliament, quoted in Miller v. United States, 357 U.S. 301, 307, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332, 1337 (1958).

The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasona-

ble governmental intrusion. Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734, 739 (1961). The 4th Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, *is not to be impaired by judicial sanction of equivocal methods,* which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right. [Emphasis added.] Byars v. United States, 273 U.S. 28, 33–34, 47 S.Ct. 248, 250, 71 L.Ed. 520, 524 (1927).

Some readers of the opinions in this case will delight in the fortuitous arrest and conviction of the defendant, a heroin addict. However, law made by this Court as to the legality of police officers' entry into *defendant's* room will govern future intrusions by police officers into the homes of *all citizens of New Mexico.* Delight may turn to sorrow when the victim of the unannounced intrusion is a more respectable person than defendant in the instant case, perhaps a member of one's own household.

> [E]ven the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security. Camara v. Municipal Court, 387 U.S. 523, 530–531, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930, 936 (1967).

This Court's sanction today of police officers' entry into a citizen's apartment—without a search or arrest warrant, without probable cause to make an arrest, without consent, and by deception—constitutes a threat to our Constitution's protection of individual liberties. If upheld and followed, it is a step towards the submission of the individual to a totalitarian government.