5 P.3d 579

2000-NMCA-053

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Odilon Martinez REYNAGA, a/k/a Odilon Reynaga Martinez, and Sergio Bustillos, a/k/a Sergio Morales, Defendants–Appellees.**

No. 20,005.

Court of Appeals of New Mexico.

April 26, 2000.

Certiorari Denied, No. 26,343, June 15, 2000.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellant.

Phyllis H. Subin, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, for Appellees.

*OPINION*

ALARID, Judge.

{1} In these two consolidated cases, the State appeals from the trial court's order suppressing evidence based upon the failure of officers executing a search warrant to comply with the knock-and-announce procedures mandated by the New Mexico constitution. For the reasons set forth below, we affirm.

*BACKGROUND*

{2} On October 21, 1997, Albuquerque police executed a search warrant at a mobile home located in southeastern Albuquerque. The police were aware that the front door of the home opened outward and that the landing was too small for the entire team of officers to position themselves immediately outside the door. Prior experience with mobile homes suggested that if the police were required to break open the door, it could take from a few seconds to a minute to pry open the door using a special tool.

{3} The officers executing the warrant devised a plan by which two officers dressed in work clothes would approach the mobile home in the guise of maintenance men and trick the occupants into opening the door by representing to the occupants that they were there to service the air conditioning. The remaining three officers, who were dressed in full assault gear with markings clearly identifying them as "Albuquerque Police," would remain hidden in an unmarked van parked outside the mobile home.

{4} Although the search warrant had been issued as part of a drug investigation, the police had no reason other than the fact of a drug investigation to believe that the occupants of the mobile home presented an enhanced risk of injury to the officers executing the warrant or that there was an increased risk that evidence would be destroyed if the officers announced their presence and purpose prior to attempting entry.

{5} When the officers arrived at the mobile home, the plainclothes officer driving the van could see that the door to the mobile home was open.[1] He advised the raid team

---

1. At the suppression hearing, the second plainclothes officer confirmed that the plainclothes officer driving the van announced to the officers in the back of the van that the door to the mobile home was open. However, the second officer later testified somewhat inconsistently that the front door was closed when they reached the landing and that one of the occupants opened the

of that fact. He pulled up, parking the van kitty-corner to the mobile home within 20 feet of the landing. The two plainclothes officers left the van and approached the mobile home. As they approached the mobile home, Defendant Reynaga came to the door. The van was visible from the doorway of the mobile home. The lead plainclothes officer engaged Reynaga in small talk in Spanish as the two officers approached the mobile home. When the officers got to the landing, the lead officer explained that they were there to fix the air conditioning. The officers could see that there was a second occupant, later identified as Defendant Bustillos, inside the mobile home near the door, but could not tell what he was doing.

{6} At that moment, the door to the van slid open and the remaining three officers left the van and ran toward the mobile home yelling "Police!" or "Policia!" When Reynaga attempted to pull the door shut, the lead plainclothes officer put his foot in the doorway and blocked the door with his body. Reynaga attempted to back into the mobile home, but the raid team seized him as they moved into the mobile home. Because they were not wearing body armor, the two plainclothes officers entered the mobile home behind the uniformed officers. During the subsequent search of the mobile home, the raid team discovered cocaine.

{7} Defendants were indicted for trafficking and conspiracy to commit trafficking in cocaine. Citing *State v. Attaway*, 117 N.M. 141, 870 P.2d 103 (1994), Defendants moved to suppress the evidence seized in the search of the mobile home on the ground that there were no exigent circumstances justifying the officers' failure to knock-and-announce their presence. Following an evidentiary hearing, the trial court entered an order granting the motion to suppress. The State filed a timely notice of appeal from that order.

*DISCUSSION*

{8} In *Attaway*, our Supreme Court recognized the constitutional status of the rule of announcement:

> door in response to a knock. It is clear from the testimony of both officers that neither of them identified themselves as police officers prior to

> [I]f an officer attempts to execute a search warrant without complying with the announcement rule and exigent circumstances are not present, the entry is unreasonable and the officer commits an "unwarranted governmental intrusion" in violation of the accused's Article II, Section 10 rights.

117 N.M. at 150, 870 P.2d at 112. The Supreme Court noted that the announcement rule "embodies the disparate values of privacy, sanctity of the home, occupant safety, and police expedience and safety." *Id.* at 151, 870 P.2d at 113. Within a year of *Attaway*, the United States Supreme Court held that the knock-and-announce principle is an element of the reasonableness inquiry under the Fourth Amendment to the United States Constitution. *See Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

{9} The State argues that the initial intrusion by the lead plainclothes officer, who blocked the doorway of the mobile home with his foot to prevent Reynaga from closing the door, can be justified as an entry pursuant to a ruse. In *State v. Chavez*, 87 N.M. 180, 531 P.2d 603 (Ct.App.1975), we upheld an unannounced, peaceful entry by officers investigating a shoplifting incident. We found support for our decision in federal cases upholding entries by ruse where the entry was accomplished without use of force. 87 N.M. at 181, 531 P.2d at 604. We note parenthetically that many federal cases, *see e.g., Leahy v. United States*, 272 F.2d 487 (9th Cir.1959), turn upon a construction of the specific "[t]he officer may break" language of 18 U.S.C. § 3109, the federal knock-and-announce statute, and therefore are of limited usefulness in determining whether the use of a ruse is consistent with the constitutional announcement rule of Article II, Section 10 of the New Mexico Constitution. Subsequent to *Attaway*, no reported New Mexico case has analyzed the legality of ruses under Article II, Section 10.

{10} We believe that a blanket ruse exception to the announcement rule is incon-

> the point at which the uniformed members of the raid team emerged from the van and stormed the doorway.

sistent with *Attaway*'s directive that noncompliance with the announcement rule must be justified on a case-by-case basis by a particularized showing of exigent circumstances. We conclude that for a ruse to be a reasonable and constitutional alternative to knocking and announcing, the State must demonstrate that, at the time of execution of the warrant, the police had a reasonable suspicion, based upon the particular circumstances of the case at hand, that exigent circumstances exist. *See State v. Vargas,* 121 N.M. 316, 910 P.2d 950 (Ct.App.1995) (upholding trial court finding of exigent circumstance sufficient to excuse compliance with knock-and-announce requirements); *accord State v. Mastracchio,* 721 A.2d 844 (R.I.1998) (rejecting blanket exceptions to announcement rule; upholding use of ruse where suspect had prior record of violent felonies, including felony-murder conviction and where apartment to be searched was equipped with one-way mirrors).

■ {11} In the present case, we share the trial court's concern with the manner in which the police executed the warrant. The most important fact revealed by the record is the complete absence of evidence of exigent circumstances that would have justified the substitution of "Rambo"-style tactics for a straightforward announcement of the officers' presence and purpose. Other than the awkwardness involved in serving a warrant to search a mobile home, neither of the officers who testified at the suppression hearing pointed to specific information indicating a heightened risk of danger to the officers executing the warrant or an enhanced risk that evidence would be destroyed. Under the facts of this case, excusing the executing officers' failure to even attempt to comply with the announcement rule would be tantamount to recognizing a per se exception for drug investigations or searches of mobile homes. The United States Supreme Court has previously rejected a blanket drug investigation exception to the Fourth Amendment's announcement requirement, *see Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) and we believe a blanket mobile home exception clearly is unwarranted based upon the showing made by the State in the trial court.

{12} We disagree with the State's argument that the knock-and-announce requirement serves no purpose once someone inside a mobile home is alerted to the presence of police. In our view, it is the state of mind of occupants who have conceded the right of the police to enter that reduces the potential for violence, and not the fact that an officer has a foot in the door. When an officer enters by ruse, he merely delays the moment at which the occupants must decide to accede or resist authority. It is not at all clear to us that it is to an officer's advantage for this decision to be made after the officer has entered the premises to be searched. *See* Amicus Brief for Amici States at 12, *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), 1997 WL 101643 (noting that in event of armed confrontation inside house, advantage lies with occupants who are familiar with layout of house). We also believe that the State's argument overlooks the privacy interests of individual occupants, whose privacy interests must be evaluated prospectively, as of the time the entry is made. The United States Supreme Court has noted that "the individual interests implicated by an unannounced, forcible entry should not be unduly minimized." *Richards,* 520 U.S. at 393 n. 5., 117 S.Ct. 1416

■ {13} The State fails to see that the reasonableness of the manner of execution of a warrant must be evaluated in the light of *each* of the interests served by the announcement rule. A ruse that causes an occupant to open a door in the belief that the door is being opened to a maintenance man may very well serve the interest of avoiding the damage to the door that would result from a breaking. But reducing the risk of damage to private property is only one interest served by the announcement rule. The fact that one interest may have been served by a ruse does not eliminate the need to inquire into how an unannounced forcible entry by an officer masquerading as a maintenance man affected other interests. *Cf. Commonwealth v. Ceriani,* 411 Pa.Super. 96, 600 A.2d 1282 (1991) (holding use of ruse to induce occupant to open door does not obviate requirement of announcing purpose and identi-

ty and allowing occupants opportunity to surrender premises peaceably). A few moments grace between announcement and entry can be crucial to the privacy of occupants, *see Richards,* 520 U.S. at 393 n. 5, 117 S.Ct. 1416, and may reduce the risk that a homeowner will mistakenly respond with deadly force to an apparently unauthorized intrusion, *see* UJI 14–5170, NMRA 2000 (defining justifiable homicide in defense of habitation); UJI 14–5172, NMRA 2000 (defining justifiable homicide in defense of another); *see generally* Mark Josephson, *Fourth Amendment–Must Police Knock and Announce Themselves Before Kicking in the Door of a House?,* 86 J.Crim.L. & Criminology 1229, 1256–57 (1996).

■ {14} In view of our conclusion that the officers' initial decision to resort to a ruse was not supported by a sufficient showing of exigent circumstances, we reject the State's attempts to use circumstances created by the officers' initial constitutionally-unreasonable conduct to justify the completion of the entry by force. *See State v. Wagoner,* 1998–NMCA–124, ¶ 13, 126 N.M. 9, 966 P.2d 176 (to justify exception to requirements of Fourth Amendment, exigent circumstances must not be result of officers' improper conduct); *Commonwealth v. Ceriani* (suppressing evidence where child induced to open door by ruse followed by simultaneous announcement and forcible entry).

*CONCLUSION*

{15} The trial court's November 13, 1998 Order of Suppression is affirmed.

{16} **IT IS SO ORDERED.**

PICKARD, C.J. (specially concurring) and BUSTAMANTE, J., concur.

PICKARD, Chief Judge (specially concurring).

{17} I agree with the majority that the trial court's order suppressing evidence should be affirmed. However, I disagree with the majority's adoption of a rule that resort to a ruse is per se unreasonable absent exigent circumstances. While adoption of such a rule appears to be supported within the general language of *State v. Attaway,* 117

N.M. 141, 870 P.2d 103 (1994), the precise issue of whether entry by ruse would be permissible absent exigent circumstances was not raised by the facts of that case and was accordingly not decided therein. Further, no case of which I am aware has adopted such a rule, and the authorities appear to be to the contrary. *See* Wayne R. LaFave, *Search and Seizure,* § 4.8(b) at pp. 604–05 (3rd ed.1996) (indicating that the purposes of the knock and announce requirement are not offended by entry by ruse); *State v. Williamson,* 42 Wash.App. 208, 710 P.2d 205, 207 (1985) (stating that when entry is gained by ruse, there is neither breaking nor entry without valid permission).

{18} I do not believe that we need to decide in this case whether a blanket ruse exception to the announcement rule is inconsistent with *Attaway's* directive that noncompliance with the announcement rule must be justified on a case-by-case basis by a particularized showing of exigent circumstances. That is because we do not have a simple ruse here. Instead, we have a ruse contemporaneously accompanied by a show of force that seized Reynaga as the raiding officers swept into the trailer. Under these circumstances, in which the ruse was contemporaneously accompanied by an illegal show of force, the State's attempt to compartmentalize the ruse as something that led to circumstances justifying a later entry by force was properly rejected by the trial court, and the trial court's suppression of evidence was well within the holdings of both our own existing cases and the out-of-state cases cited by the majority. *See State v. Chavez,* 87 N.M. 180, 531 P.2d 603 (Ct.App.1975) (holding that entry by ruse is not illegal if force is not an element of the entry); *Commonwealth v. Ceriani,* 411 Pa.Super. 96, 600 A.2d 1282 (1991) (suppressing evidence where entry by ruse was accompanied by force).

{19} In light of the foregoing, I specially concur.