2004-NMCA-064

92 P.3d 61

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Randy JOHNSON, Defendant–Appellant.**

No. 23,463.

Court of Appeals of New Mexico.

April 16, 2004.

Certiorari Granted, No. 28,660, May 18, 2004.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Sujatha Baliga, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Defendant Randy Johnson appeals the denial of a motion to suppress evidence that was obtained pursuant to a valid search warrant. He argues that the search presented no exigent circumstances and that the police violated the "knock-and-announce" requirements of the state and federal constitutions by breaking into his motel room only ten seconds after making their presence known. We agree with Defendant and reverse.

## BACKGROUND

{2} Detective John Sharkey of the Bernalillo County Sheriff's Department obtained a search warrant for a ground-floor motel room on Central Avenue in Albuquerque. Defendant does not challenge the validity of the warrant, which was based on reports from a confidential informant that methamphetamine was being sold from the motel room, as well as two "controlled buys" that had been observed by officers.

{3} Sharkey and other officers served the warrant at approximately 6:15 a.m. on a Saturday in January 2002. In doing so, they knocked on the door and announced their intention by shouting "sheriff's department" and "search warrant." The trial court found that this initial phase of knocking and announcing took ten seconds, during which time the officers heard no response from within the room. After ten seconds, the officers began to hit the door with a battering ram. The battering of the door occurred for an additional twelve seconds, and then the door broke open. Within the room the officers found and detained Defendant. They also found, in the bathroom, the chemicals and containers of a methamphetamine lab.

{4} Based on the results of the search, the State charged Defendant with possession of drug paraphernalia and trafficking controlled substances by manufacturing methamphetamine. *See* NMSA 1978, § 30–31–20(A)(1) (1990); § 30–31–25.1(A) (2001). Defendant moved to suppress the evidence on the ground that, under the circumstances, the police did not wait a reasonable length of time between knocking and announcing, and entering. After an evidentiary hearing, the trial court denied the motion, finding that the officers acted reasonably under the circumstances. Defendant then entered a conditional guilty plea, reserving the right to this appeal of the denial of his suppression motion.

## DISCUSSION

{5} Defendant contends that the search of his motel room and seizure of evidence were unreasonable under both the

Fourth Amendment of the U.S. Constitution and Article II, Section 10 of the New Mexico Constitution. We review this constitutional question de novo, although we give deference to the trial court's factual findings. *State v. Vargas*, 1996–NMCA–016, ¶ 7, 121 N.M. 316, 910 P.2d 950; *State v. Halpern*, 2001–NMCA–049, ¶ 8, 130 N.M. 694, 30 P.3d 383.

 {6} The federal and state constitutions impose a reasonableness requirement on searches executed by the government, and the knock-and-announce requirement is an element of our overall "reasonableness inquiry." *State v. Reynaga*, 2000–NMCA–053, ¶ 8, 129 N.M. 257, 5 P.3d 579. More particularly, both at common law and under the state constitution, the knock-and-announce rule serves multiple policy interests: (1) preventing needless destruction of property, (2) protecting individual privacy, and (3) protecting both police and occupants from potential violence by a startled occupant. *State v. Attaway*, 117 N.M. 141, 147, 151, 870 P.2d 103, 109, 113 (1994). The reasonableness of the execution of a warrant is evaluated considering all three of these interests, and just because one interest is served, we cannot disregard the others. *Reynaga*, 2000–NMCA–053, ¶ 13, 129 N.M. 257, 5 P.3d 579. At the same time, these interests "must be balanced against potentially countervailing, legitimate government interests," *Attaway*, 117 N.M. at 151, 870 P.2d at 113, which include officer safety concerns as well as the strong interest law enforcement has in preserving evidence. *See, e.g., Vargas*, 1996–NMCA–016, ¶ 12, 121 N.M. 316, 910 P.2d 950 (finding exigent circumstances that justified departure from the knock-and-announce rule where the occupants were known to be armed, convicted criminals with a history of belligerence toward law enforcement); *State v. Ortega*, 117 N.M. 160, 163, 870 P.2d 122, 125 (1994) (holding that an unannounced entry was reasonable where officers had specific reason to believe that the occupants would destroy evidence if they were alerted to the presence of law enforcement). Drug investigations frequently "pose special risks" for officers; yet, we must weigh the risks considering the specific facts of each case. *See Richards v. Wisconsin*, 520 U.S. 385, 392–94, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (in the context of a "no-knock" entry, rejecting a blanket exception to the knock-and-announce rule for drug cases). We resolve the tension between these competing interests against the backdrop of a rule with roots going back to seventeenth-century England. *See Attaway*, 117 N.M. at 146, 870 P.2d at 108, (citing *Semayne's Case*, 77 Eng. Rep. 194 (K.B. 1603)).

 {7} We first address the issue of how long the officers actually waited after knocking and announcing and before forcing entry. The State argues that in counting the seconds, we should follow the trial court's method of including the twelve seconds during which the officers were striking the door with the battering ram. This approach results in a total time of twenty-two seconds from when the officers first knocked until they actually gained entry. Defendant counters that the seconds should be counted only until the officers began using force on the door, which results in an interval of only ten seconds. Considering these arguments in light of the policies served by the knock-and-announce rule, we agree with Defendant that the trial court erred when it included the time when the officers were battering the door.

{8} At the moment the officers applied the battering ram to the door, the policy interest of preventing destruction of property was no longer being served. Although few authorities directly address this issue, we are not the first court to reason that in order to recognize the policy of protecting property, we must exclude the battering time from the overall calculation of seconds. *See United States v. McCloud*, 127 F.3d 1284,1289 n. 2 (10th Cir.1997). This conclusion is consistent with the principle that we cannot disregard any one of the interests served by the knock-and-announce rule. *Reynaga*, 2000–NMCA–053, ¶ 13, 129 N.M. 257, 5 P.3d 579. As Defendant notes, it is not reasonable to expect a person to answer a door while officers are striking it with a battering ram, and thus it does not make sense to include that time in determining whether an occupant constructively refused to let the officers inside. Accordingly, we reject the State's argument

that we measure the time up until the moment that the officers crossed the threshold, and we instead hold that the time is properly measured from when the officers began to knock and announce until when they began hitting the door with a battering ram. In this case, the relevant interval of time is ten seconds.

 {9} We now turn to the State's contention that because of exigent circumstances, the officers were not required to fully comply with the knock-and-announce requirement. We agree with the State that the existence of exigent circumstances is measured objectively from the standpoint of a "reasonable, well-trained, and prudent police officer." *Attaway*, 117 N.M. at 153, 870 P.2d at 115; *Ortega*, 117 N.M. at 162, 870 P.2d at 124. In assessing the reasonableness of the officers' belief of exigency, however, we consider the particular facts and circumstances of the case, which may include information obtained prior to the search as well as the officers' observations at the scene. *Attaway*, 117 N.M. at 152, 870 P.2d at 114. Noncompliance with the announcement rule "must be justified on a case-by-case basis by a particularized showing of exigent circumstances." *Reynaga*, 2000–NMCA–053, ¶ 10, 129 N.M. 257, 5 P.3d 579.

 {10} For example, to analyze exigent circumstances based on potential violence by the occupant, we consider whether the officers had "knowledge of the specific individual's propensity to use violence." *Attaway*, 117 N.M. at 152, 870 P.2d at 114. Thus, in *Vargas*, police officers properly found exigency where they had information that the defendants had specific firearms, that they were convicted felons, and that they had challenged officers in the past. 1996–NMCA–016, ¶¶ 9–13, 121 N.M. 316, 910 P.2d 950. Similarly, to analyze exigent circumstances based on potential destruction of evidence, we consider whether officers had "good reason" to think that evidence would be destroyed, such as information from a confidential informant that the occupants would probably dispose of drugs. *Ortega*, 117 N.M. at 163, 870 P.2d at 125.

{11} In this case, the State suggests that the existence of a drug manufacturing facility created exigency. Because a methamphetamine lab poses a danger of explosion, other jurisdictions have found that where officers know there is a lab in operation, that knowledge may create exigency. *See e.g., People v. Messina*, 165 Cal.App.3d 937, 212 Cal. Rptr. 75, 76–80 (1985) (finding exigent circumstances based on the risk of fire where a confidential informant informed the police of a possible lab and then an officer experienced with methamphetamine labs smelled a strong odor indicating that a lab was in operation); *State v.Thompson*, 112 Wash.App. 787, 51 P.3d 143, 148–49 (2002) (recognizing "emergency exception" to warrant requirement where police suspect "objects likely to burn, explode or otherwise cause harm"). Regardless of whether a working methamphetamine lab is a type of exigent circumstance, however, in the absence of any particularized information, we cannot conclude that the officers held an objectively reasonable belief of exigency. *See Reynaga*, 2000–NMCA–053, ¶ 10, 129 N.M. 257, 5 P.3d 579.

 {12} The State presents no specific information to establish exigency posed by this particular search or Defendant. As to the existence of a working lab, Sharkey included in his affidavit for search warrant that the motel room might contain supplies for manufacturing methamphetamine, but he provided no support for this assertion other than his personal belief. At the hearing on the motion to suppress, both officers were specifically questioned about the basis for their belief that they would find a lab. In response, although they implied that their confidential informant might have told them about a lab, they declined to provide any specific information about why they harbored this belief. In an attempt to establish exigency based on officer safety, the State points to evidence that sellers of methamphetamine are dangerous in general; however, the two officers who testified at the motion hearing both clearly acknowledged that they had no information that this Defendant was dangerous. The officers further testified they had no specific information that this Defendant was likely to destroy evidence. With no case-specific information to assess, we cannot conclude that any exigency was

objectively reasonable from the standpoint of a prudent officer. *See Attaway*, 117 N.M. at 152, 870 P.2d at 114 (holding that the state constitution requires something more than general knowledge as a basis for exigency).

{13} Thus, we are left with the question of whether, in the absence of exigent circumstances, ten seconds was a reasonable time for these officers to wait. Case law provides no magic number of seconds after which officers may constitutionally enter. *See, e.g., U.S. v. Jenkins*, 175 F.3d 1208, 1213 (10th Cir.1999) ("[A] bright line rule for determining how much time is enough is inappropriate."); 68 Am.Jur.2d *Searches and Seizures* § 243 (2003) ("[t]here is no bright-line rule for determining what is a reasonable amount of time for the officers to wait before entering"). Instead, our analysis must be guided by the particular facts and circumstances of this case. *Attaway*, 117 N.M. at 150, 870 P.2d at 112; *see also United States v. Banks*, 540 U.S. ——, ——, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003) ("we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances"); 2 Wayne R. LaFave, *Search and Seizure* § 4.8 (3d ed.2004) (advocating that whether occupants have constructively refused to answer the door "should be determined only by taking into account the circumstances of the particular case").

■■■ {14} In this case, officers executed the warrant at 6:15 on a Saturday morning. They chose this time because they expected Defendant to be sleepy and not alert. During the ten seconds that the officers waited, they heard nothing from within the room; that is, they heard no sounds to indicate that Defendant was preparing to answer the door, nor did they hear sounds to indicate that he was attempting to destroy evidence. The structure to be searched was a motel room, and thus the officers could have inferred that Defendant would not need much time to get to the door. As to whether Defendant might destroy evidence or arm himself, however, the officers had no particular information giving rise to expectations one way or the other.

{15} This collection of facts and possible inferences presents a close question. However, because ten seconds is such a short interval of time to wait for a person to answer a door at 6:15 on a weekend morning, and because the officers heard no sounds suggesting that Defendant was awake—either to answer the door or to destroy evidence—we decide the question in Defendant's favor. This case presents a similar number of seconds and time of day as in *Attaway*, which characterized ten to fifteen seconds at 6:00 a.m. on a Saturday as "extremely short" but ultimately acceptable because of exigent circumstances. 117 N.M. at 153–54, 870 P.2d at 115–16. Subtracting the exigency from the equation, we are left with an interval of time that is too short altogether. Accordingly, we find that under these circumstances and in the absence of exigency, ten seconds was not a sufficient interval to conclude that Defendant refused to answer the door. The search was not constitutionally reasonable, and the results of the search should have been suppressed.

## CONCLUSION

{16} For the foregoing reasons, we reverse the trial court's order denying Defendant's motion to suppress and remand for proceedings consistent with this opinion.

{17} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and IRA ROBINSON, Judge.