600 A.2d 1282

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Carl CERIANI, Appellant.**

Superior Court of Pennsylvania.

Argued July 16, 1991.

Filed Dec. 23, 1991.

Richard R. Fink, Levittown, for appellant.

C. Theodore Fritsch, Jr., Asst. Dist. Atty., Doylestown, for the Com., appellee.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Bucks County on February 15, 1991, following appellant's conviction on charges of possession of a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia and criminal conspiracy. We reverse the decision of the suppression court, vacate the judgment of sentence and remand for a new trial.

Appellant herein raises the following three issues, all of which arise from the denial of his pre-trial motion to suppress:

I. Was there insufficient evidence of probable cause presented to the magistrate to justify the issuance of a search warrant because the police affiant intentionally or recklessly omitted material information that would have been helpful in determining the credibility of the informant?

II. Where the police forcibly enter a residence to serve a search warrant at the same time as an eight-year-old boy opens the door in response to a falsehood that his father's car has been struck, has appellant been given a reasonable opportunity to voluntarily surrender the premises where there has been no compliance with the requirement that police knock, announce their authority and purpose, and wait a reasonable length of time to enter?

III. Did the Bensalem Township police act beyond the territorial limits of their primary jurisdiction when they failed to obtain consent of the chief law enforcement

officer, or a person authorized by him to give consent prior to service of a search warrant outside the confines of their own jurisdiction?

Appellant's Brief, p. 3.

When we review the denial of a motion to suppress, this court must:

> 'determine whether the factual findings of the [suppression] court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).'

*Commonwealth v. Ariondo*, 397 Pa.Super. 364, 367, 580 A.2d 341, 342–343 (1990), quoting *Commonwealth v. Schneider*, 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989).

■ Applying the aforementioned standard, we will first address appellant's assertion that the search warrant was issued without probable cause. Appellant argues that the affidavit of probable cause failed to set forth sufficient facts from which the issuing authority could independently determine the reliability and credibility of the informants. Further, appellant asserts that the police omitted from the affidavit information concerning the prior criminal record of informant Dana Lens which was material to the issue of his credibility.

■ When reviewing whether a search warrant was sufficiently supported by probable cause, we employ the "totality of the circumstances" analysis of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985) (adopting the "totality of circumstances" test in Pennsylvania). The "totality of the circumstances" test has been summarized as follows:

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gray,* 503 A.2d at 925, quoting *Gates,* 462 U.S. at 238–239, 103 S.Ct. at 2332.

The record reveals that on December 2, 1988, Detective Diaz applied for a warrant to search appellant's home located in the Magnolia Hill area of Bucks County. The affidavit of probable cause for the search warrant reads as follows:

Whereas, your Affiant is Juan Diaz # 52, Bensalem Twp., Police Department, is currently in a joint investigation with Tullytown Boro Police Department and the Bucks County District Attorney's Office. Your Affiant is a six year Police Veteran who's experience includes over 100 narcotics related investigations. I have received training in narcotics investigations by Immigration and Naturalization Services, Pennsylvania State Police, and the Bucks County District Attorney's Office.

Whereas, your Affiant received the following information from Bucks County Detective Bill Kling: At about 0715 hours, December 2, 1988, Bucks County Detective, Roberta Kostick interviewed Fay Geiser, 88 Junewood Drive Levittown Pa. Fay Geiser had just been arrested for various violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act of 1972 and was presently at the Tullytown Police Department, Tullytown Boro Bucks County Pa. Fay Geiser advised Detective Kostick that her source of drugs is a Dana Lens. Dana Lens's source is a man named Carl who used to live in Morrisville. She said that about 3–4 months ago Carl moved into a house in the Magnolia Hill section of Levittown. Detective Kostick then spoke to William Geiser, Fay's Husband, who was also at the Tullytown Police

Department having been arrested for various violation of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act of 1972. Detective Kostick asked William Geiser if he knew a Carl, who was Dana Len's supplier. He said that he did and that Carl moved into a second hand house in Magnolia Hill.

Whereas, your Affiant Detective Juan Diaz talked to Dana Lens on 12-2-88, at Tullytown Boro Police Department. Dana Lens had just been arrested for violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act of 1972. Dana Lens told your Affiant, Detective Diaz, that he's supplied Methamphetamine by Carl Ceriani. Carl Ceriani resides at 49 Mistletoe, Bristol Twp., Bucks County (phone # 547-4272). Dana Lens also informed this writer that he has been selling Methamphetamine for Carl Ceriani for approximately one year. Dana Lens stated that he usually calls Carl Ceriani, via telephone and tells him that everything is good and if he could come over to borrow some tapes. This means that Dana Lens had sold all of his Methamphetamine and that he's ready to drive to Carl's house (49 Mistletoe Bristol Pa.) and pick up more Methamphetamine. Dana Lens stated that he usually gets 4 ozs. at a time.

Whereas, on 12-2-88, at approximately 1315 hours, Dana Lens contacted Carl Ceriani, via telephone and informed him that everything was good and that Dana wanted to come over to borrow some tapes. According to Dana Lens, Carl Ceriani told him that it was ok and to come over. Your Affiant was present during this phone call and heard Lens's end of the conversation.

Whereas, Detective Timothy Carroll of the Bensalem Police Department informed your Affiant that during the execution of a search warrant of Mr. Dana Lens, Detective Carroll came across Mr. Carl Ceriani's address and phone number (49 Mistletoe, Bristol Pa # 547-4272).

Whereas, your Affiant was advised by Bucks County Chief of Detectives, Paul Gourley, that according to the Voter's registration rolls, the following individuals reside

at 49 Mistletoe Lane, Bristol Twp. Bucks County Pa. Carl T. Ceriani, D.O.B. 1-10-52, Pamela S. Ceriani, D.O.B. 10-25-63 and Anthony J. Kulkavicz, D.O.B. is unknown. Whereas, Bucks County Detective Thawley Hayman, informed your Affiant that according to the Bucks County Deed Book number 2840 page number 152, Mr. Carl T. Ceriani and Mrs. Pamela S. Ceriani are the owners of the residence located at 49 Mistletoe Lane, Bristol Twp., Pa., as of September 7, 1988.

Whereas, based on the preceding information, your Affiant believes Methamphetamine a scheduled II controlled substance is present at 49 Mistletoe Lane Bristol Twp. Pa and also that probable cause exists to search the premises, the residence of Carl Ceriani and Pamela Ceriani and any other person present to seize Methamphetamine and any other related paraphernalia and or records and monies.

Approved on this day 12-2-88 A.D.A. Kip Portman.

After reviewing the affidavit of probable cause, we find that the issuing authority had more than sufficient information upon which to determine there was a fair probability that methamphetamines would be found in appellant's home. Three separate informants identified appellant as the source of their drugs and provided detailed information concerning the location of appellant's residence. One of the three, Dana Lens, explained to police the method by which he contacted appellant in order to get a new supply of methamphetamines. Significantly, in the presence of the police, Lens contacted appellant and ordered additional drugs.

Applying the "totality of the circumstances" test, we find that the affidavit clearly supports a determination that probable cause existed. Instantly, appellant only attacks the credibility of informant Dana Lens, asserting that the issuing authority would not have found probable cause to exist had the magistrate known about informant's prior record and possible drug addiction. However, the fact that all of the informants, including Lens, made declarations

against their penal interest supports the reliability of their statements. See *Commonwealth v. Mazzochetti*, 299 Pa.Super. 447, 445 A.2d 1214 (1982); *Commonwealth v. Stickle*, 484 Pa. 89, 398 A.2d 957 (1979); *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975).

■ Having determined that the search warrant was supported by probable cause, we turn to the question of whether the police complied with the mandates of the "knock and announce" rule, Pa.R.Crim.P. 2007, when executing the search warrant. Rule 2007, Manner of Entry into Premises, provides:

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcibly entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

It was the obligation of the Commonwealth, at the suppression hearing, to prove, by a preponderance of the evidence, that the search or seizure of the evidence satisfied the mandates of Rule 2007. In *Commonwealth v. Parsons*, 391 Pa.Super. 273, 570 A.2d 1328, 1331–32 (1990), this Court articulated the underlying objectives of Rule 2007; to-wit:

"The purpose[s] of the 'knock and announce' rule," ..., "[are] to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against unauthorized entry of persons unknown to him or her, and to prevent property damage resulting from forced entry." It has also been stated that even where the police announce both their identity and purpose

... forcible entry remains impermissible if the occupants of the premises sought to be entered have not been provided with the opportunity to relinquish the premises voluntarily. The critical inquiry then, is whether sufficient time elapsed for the police to form a reasonable belief that the occupants of the premises did not intend to surrender the premises peaceably or voluntarily. [Citations omitted]

In compliance with the preceding, our examination of the record reveals that Detective Diaz and approximately ten other police officers travelled to appellant's residence to execute the warrant. Judge Edward G. Biester, Jr., in his Findings of Fact and Conclusions of Law, described the manner of execution as follows:

What had been arranged by the officers was the creation of a ruse by which they hoped to achieve a peaceable and prompt opening of the premises to their entrance. They had already been involved in a number of prior search warrant executions and in the course of those executions had acquired additional information with respect to potential seizure of contraband in the Ceriani home. The execution of the Ceriani search warrant was the last of the search warrant executions to be attempted that evening. What the officers had arranged for was the sound of an automobile accident created just outside the Ceriani home. Then following that sound of screeching brakes they intended to knock on the door and then have the door opened to them and then begin with discussion of a car accident involving a Ceriani vehicle so as to obtain peaceable entry into the premises.

Detective Eastlack testified that he parked his car in front of a parked car out in the street and simulated an accident. He then went to the doorway of the Ceriani home. He knocked on the door. The door was opened, and a young boy answered the door. Detective Eastlack then said "Can I see your father? I just hit the car." When the boy opened the door I said "Police, search warrant, I ran past him and I was yelling as I went

through." Further Detective Eastlack testified that he had knocked on the door and he said to the boy "Oh man I hit the car" and heard a lady inside say "Oh somebody hit a car." The door was opened by the boy. After it was opened Detective Eastlack said "can I see your father, I just hit the car out front." The entranceway to the premises is through a foyer about three feet in size. After Detective Eastlack had said I just hit the car out front the young boy opened what must have been an outer door and it was after that that Detective Eastlack said I'm a police officer. Then Detective Eastlack yelled police search warrant and he then ran past the boy and ran past the people who were in the kitchen. He was immediately followed by other police officers. Present in the premises was Mr. Ceriani, Mr. Ceriani's brother and other family members. Detective Eastlack had a copy of the warrant with him at the time that he entered the premises.

Trial Court Opinion, pp. 2–4.

In examining whether Rule 2007 has been violated, the first step is to consider whether the law enforcement officers provided notice to the occupants of the premises to be searched. *Parsons, supra.* Presently, the police made use of a ruse to gain entrance into appellant's residence. In *Commonwealth v. Regan,* 254 Pa.Super. 555, 386 A.2d 89 (1978), we held that "police use of a ruse to initiate execution of a search warrant is permissible *where it is followed by an announcement of authority and purpose and by peaceful entry.*"

The Commonwealth argues the case of *Commonwealth v. DeCaro,* 298 Pa.Super. 32, 444 A.2d 160 (1982) is controlling presently. Therein, the "knock and announce" issue was addressed as follows:

The testimony at the suppression hearing shows that the police took with them one Sadusky, a defendant on another charge who knew appellant and who had agreed to have appellant open her door to him for the benefit of the police. The front door was reinforced by an iron gate

opening outwards. When appellant opened the door to Sadusky, at least one police officer yelled out "police" and "we have a warrant". A police officer standing with Sadusky grabbed the iron gate to prevent it from being slammed shut, and the other two police officers ran in, while appellant stood there, doing and saying nothing. The police had seen another person in the house, and rushed through the house to prevent disposal of any controlled substance, showing the warrant to appellant later. The judge, on the basis of *Commonwealth v. Regan*, 254 Pa.Super.Ct. 555, 386 A.2d 89 (1978), found that Sadusky was being used as a ruse to get the door open and that there was no violation. We see no error in the conclusion drawn by the judge from the facts. The crucial issues are authority, purpose and entry, *Commonwealth v. McCarthy*, 257 Pa.Super.Ct. 42, 390 A.2d 236 (1978). The police announced their authority and purpose and though they rushed in quickly there was no forced entry. There was no violation of appellant's rights in the execution of the warrant.

*DeCaro*, 444 A.2d at 167.

However, we find that *DeCaro, supra,* is factually distinguishable from the case before us. In *DeCaro, supra,* there was no forced entry. Instantly, we are convinced that officer's forcibly entered the premises and failed to give appellant an opportunity to surrender the premises peaceably.

The record reveals that the police staged a car accident in front of appellant's home. Plainclothes Officers Eastlack and Carroll then went to the front door in an effort to gain entrance to appellant's residence. When they reached the door, both officers testified that they could see into the kitchen of the house where appellant, several other adults and a child were sitting at a table and talking. In response to Officer Eastlack's knock on the front door, appellant's son answered. Officer Eastlack testified that the child appeared to be between the ages of five and seven. N.T., p. 60. Officer Eastlack told the boy that he had hit a car and

asked him if he could see his father. The boy then opened the screen door to the small enclosed front porch. Officer Eastlack, while running past the child through the partially opened door, yelled "Police, search warrant." N.T., pp. 51–52. Approximately ten other police officers followed Officer Eastlack into the home, and at least some of the police officers accompanying Officer Eastlack, had their guns drawn. N.T., pp. 36, 91–92, 99, 107–108, 111, 119–120. Sean Ceriani, the child who opened the door, testified he was pushed into the wall when the officers ran past him. N.T., p. 113.

Based on those facts, we find that there was forced entry. The officers rushed past the child (some had their guns drawn) pushing him aside as they entered the house, essentially announcing their authority and purpose simultaneously with their entry. Factually, the method of entrance is similar to that which was disapproved by this Court and our Supreme Court in *Commonwealth v. Chambers*, 385 Pa.Super. 605, 561 A.2d 1257 (1989), *affirmed*, —— Pa. ——, 598 A.2d 539 (1991). Therein, the police knocked on the defendant's door, and when he answered, they announced "Police officers. We have search warrant for the premises." Contemporaneously, the officers pushed open the already partially opened door, forced the defendant against the wall and entered the house with their guns drawn. This court determined that Rule 2007 and the Fourth Amendment of the United States Constitution were violated because the police failed to wait a reasonable period of time after announcing their identity and purpose before forcefully entering the premises, in the absence of exigent circumstances. *Chambers*, 561 A.2d at 1258–1259. Likewise, our Supreme Court determined that the officer's forcible entry without waiting a reasonable period of time violated Article 1, § 8 of the Pennsylvania Constitution. *Chambers*, 598 A.2d at 542. Here, too, we find that the officers failed to wait a reasonable period of time after announcing their identity and purpose in order to give appellant (or any other

occupant of the premises) the opportunity to surrender the premises.

■ Although the Commonwealth argues the exigent circumstances existed which would permit a forced entry, see *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982), we find no support for such an allegation in the record. Officers Carroll and Eastlack both testified that they could see inside appellant's home through the kitchen window. They did not observe any activity which would indicate appellant (or any other occupant for that matter) was attempting to destroy evidence or arm himself. The only evidence of exigent circumstances was the testimony of Officer Carroll who testified that appellant is a "large guy" and that there "could be trouble getting in there." N.T., p. 45. Such a bald, self-serving allegation of exigent circumstances is patently fallacious.

Instantly, the police knew children were present within the home and were able to observe the occupants of the residence during the ruse. From the record it appears the ruse was working as planned, and yet, the officers inexplicably opted to push their way past a child, without waiting a reasonable period of time to afford the occupants an opportunity to surrender the premises. Despite the espoused goal of the ruse, to lure appellant outside and gain his cooperation, the police did not wait for appellant to come to the door. N.T., p. 45. Having found that the officers effected a forced entry without waiting a reasonable period of time to give appellant a chance to surrender the premises peacefully, we hold that Rule 2007 was violated. *Cf., Chambers, supra.*

■ Even though there was no technical compliance with Rule 2007's notice requirement, this does not *ipso facto* necessitate a finding that the evidence seized *must* be suppressed. See *Commonwealth v. Davis*, 407 Pa.Super. 415, 595 A.2d 1216 (1991); *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054, 1056 (1987). As was noted in

*Commonwealth v. Mason,* 507 Pa. 396, 406–07, 490 A.2d 421, 426 (1985):

> ... exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy.

The Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution prohibits unreasonable searches and seizures, and this applies to the execution of the search warrant. *Chambers,* 598 A.2d at 540; *Chambers,* 561 A.2d at 1259, citing *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795 (1968). The reasonableness of the warrant's execution must be determined on a case-by-case basis. *Id.*

Our review of the record reveals that manner of execution of the search warrant violated both state and federal constitutional prohibitions of unreasonable searches and seizures, and the lower court should have suppressed the evidence. The evidence of record does not support the reasonableness of the execution of the search warrant. There is no evidence that anyone in the house attempted to destroy evidence, evade the police, arm themselves or resist the execution of the warrant. In fact, there is no evidence of exigent circumstances of any kind. Although appellant's child opened the screen door to the front porch, there is no evidence to suggest that the boy said anything to the officer, much less consented to the search. The record clearly reveals that the officers did not wait even one moment after announcing their authority and purpose before entering the house, and certainly, no one was given the opportunity to relinquish the premises voluntarily.

We cannot say that the police acted reasonably under the circumstances *sub judice.* They forced their way past a child after using a ruse to get him to the door. They did

not give the occupants the opportunity to surrender the premises, despite the fact that officers were able to see inside the residence and knew that no suspicious activity was occurring. Certainly, the potential for injury to person (especially innocent children) and property was unnecessarily enhanced by the officer's failure to wait just a few more seconds until appellant or some other adult came to the door.

Balancing the benefits of deterring police misconduct against the costs of excluding otherwise reliable evidence, *Chambers*, 561 A.2d at 1260, citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), we conclude the lower court erred in failing to suppress the evidence seized as a result of the unreasonably executed warrant. The police put themselves, appellant, other adults and innocent children at risk unnecessarily. Under the circumstances of this case, we hold that the officer's failure to wait a reasonable period of time in order to afford the occupants the opportunity to surrender the premises violated Pa.R.Crim.P. 2007, Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. Exclusion of the evidence is the appropriate remedy. "A search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from what is dug up subsequently." *Chambers*, 598 A.2d at 542, quoting *Commonwealth v. Newman*, 429 Pa. 441, 449, 240 A.2d 795, 799 (1968). Accordingly, we reverse the suppression decision of the court below and vacate appellant's conviction. Cf., *Chambers, supra.*[1]

Judgment of sentence vacated and a new trial granted. Jurisdiction relinquished.

HUDOCK, J., concurs in the result.

1. Due to our resolution of the "knock and announce" issue, it is unnecessary to address appellant's remaining assertion of error.